NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY ROCK,<br><br>       Plaintiff,<br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>       Defendant. | Civil Action No. 2:16-cv-08765 (SDW)<br><br>**OPINION**<br><br>November 14, 2017 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Anthony Rock's ("Plaintiff" or "Rock") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Leonard Olarsch's ("ALJ Olarsch") denial of Plaintiff's claim for a period of disability benefits and disability benefit insurance under the Social Security Act (the "Act"), which was based on his determination that Plaintiff is not disabled under §§ 216(i) and 223(d) of the Act. This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that ALJ Olarsch's factual findings are not supported by substantial evidence. Therefore, the Commissioner's decision is **REMANDED**.

I. **PROCEDURAL AND FACTUAL HISTORY**

   A. **Procedural History**

   On April 17, 2013, Plaintiff applied for a period of disability, beginning on October 1, 2011 and for corresponding disability insurance benefits. (Compl. ¶ 5.; Administrative Record 20, 175) [hereinafter Tr.]. The claim was denied on August 5, 2013, and again upon reconsideration on October 4, 2013. (*Id.*) Plaintiff filed a written request for hearing on October 14, 2013. (*Id.*) On February 25, 2015, Plaintiff appeared and testified at a hearing before ALJ Olarsch. (*Id.*) ALJ Olarsch denied Plaintiff's claim for a period of disability and disability insurance benefits on March 24, 2015. (Tr. 27.) Plaintiff then submitted a request for review of ALJ Olarsch's decision on May 21, 2015. (Tr. 15-16.) The Appeals Council denied Plaintiff's request on May 3, 2016, making the ALJ's decision the Commissioner's final decision. (Tr. 2.) Plaintiff now requests that this Court reverse the Commissioner's decision and remand for an award of "all past, present, and future benefits." (Compl. ¶ 10.)

   B. **Factual History**

      **1. Personal and Employment History**

   Plaintiff was forty-four years old on the alleged disability onset date in October 2011. (Tr. 26; Def.'s Br. 2.) He alleges disability from a neck injury, right upper extremity pain, right hip pain, and right foot pain. (Tr. 24; Pl.'s Br. 2; Def.'s Br. 2.) Plaintiff has a high school education and is able to communicate in English. (Tr. 26.) He also has a commercial driver's license and is trained as a firefighter and a security officer. (Tr. 35, 169.) Prior to Plaintiff's alleged disability, he worked as a truck driver, and as a chemical operator for various businesses from 1996 to 2011. (Tr. 185.) Plaintiff claims disability based on an injury he sustained in October 2011, when a 600-pound drum hit his right hand. (Tr. 434-35.)

**2. Medical History**

Prior to his work injury, Plaintiff injured his foot in 1988 while in the military and was later diagnosed with reflex sympathetic dystrophy.[1] (Tr. 414.) In 1996, he underwent a hernia repair. (*Id.*) On August 16, 2011, Plaintiff visited the Freeman Pain Institute, complaining of increased right lower extremity pain and low back pain. (Tr. 274.) At the visit, Philip Ceraulo, D.O., examined the Plaintiff and observed that he walked with an antalgic gait, had mild discoloration in the right lower extremity, diminished sensation in part of the right leg, and mild tenderness and spasm in the bilateral lumbar paraspinals. (Tr. 275.) Dr. Ceraulo did not find any significant disc abnormality, but did discover a component of sacroiliac joint disease during the physical. (*Id.*) At Dr. Ceraulo's recommendation, Plaintiff had an MRI on August 18, 2011. (Tr. 272.) On August 30, 2011, Plaintiff received a right sacroiliac joint injection, which provided some relief for about one week. (Tr. 269.) On September 19, 2011, Plaintiff returned to the Freeman Pain Institute complaining of pain in his lower back, rating his pain at 9 out of 10. (*Id.*)

On October 1, 2011, Plaintiff sought emergency treatment for a work-related injury, complaining of wrist pain, numbness, and swelling. (Tr. 236-240.) Although an x-ray of his right wrist showed no evidence of fracture or dislocation, an x-ray of his cervical spine did show a right paracentral disc herniation, disc bulging and facet hypertrophy, neural foraminal narrowing, and moderate central canal stenosis without cord compression. (Tr. 239, 258.) The next day, Raafat Ghofraiel, M.D., a Workers' Compensation physician, diagnosed Plaintiff with a right hand contusion, radiculitis/neuritis, and a wrist sprain. (Tr. 210.) On October 24, 2011, another MRI revealed a possible subchondral cyst adjacent to Plaintiff's right sacroiliac joint. (Tr. 277.) He returned to his job, performing light-duty work. (Def.'s Br. 4.) On October 29, 2011, Plaintiff

---

[1] Plaintiff never received disability benefits through the Veterans Administration. (Tr. 41.)

sought medical treatment for increased back pain and was prescribed an anti-inflammatory medication and a muscle relaxer. (Tr. 214-27.) Plaintiff received another right sacroiliac joint injection on January 23, 2012. (Tr. 263.) Approximately two weeks later, Plaintiff reported about 70% pain relief. (*Id.*) However, for the next several months, Plaintiff reported pain in his right lower extremity. (Tr. 261-63.) In June 2012, Plaintiff underwent surgery to treat pain in his spine. (Tr. 407-26.) Since his injury, Plaintiff has been unable to work[2] and is restricted to lifting five pounds. (Tr. 83.)

Plaintiff participated in physical therapy and a home exercise program. (Tr. 320-92.) On August 10, 2012, Plaintiff went to a six-week follow-up appointment with Dr. Ramil Bhatnagar after his surgery. (Tr. 302.) At the appointment, Plaintiff complained of lower back pain and was prescribed pain medication. (*Id.*) On August 31, 2012, Plaintiff complained of pain in his lower back and some dizziness, which Dr. Bhatnagar attributed to Plaintiff's prescription medication. (Tr. 300.) In late 2012, Plaintiff complained of difficulty swallowing, right wrist pain, and shoulder pain. (Tr. 296-97.) The following year, Plaintiff continued to complain of neck symptoms, lumbar pain, and hand swelling. (Tr. 298.) In January 2013, Dr. Bhatnagar reviewed a quality study by Kinematic Consultants; specifically, a Functional Capacity Evaluation and Work Ability Assessment. (Tr. 290-291.) Based on the report, Dr. Bhatnagar concluded that because Plaintiff performed "sub-optimally," he could not return to work as a chemical operator. (Tr. 290-91, 383-406.) According to Dr. Bhatnagar, Plaintiff could only perform light-duty work. (*Id.*)

Later in 2013, Dr. Rashel Potashnik observed that Plaintiff walked with a limp, but was able to undress himself, climb on the examination table, walk on his heels, and squat. (Tr. 431.) Plaintiff was tender on palpation of his lower cervical paraspinal and right upper trapezius muscles

---

[2] Plaintiff filed a Workers' Compensation claim for his injury, which was still pending at the time of the administrative hearing. (Tr. 43.)

and exhibited a decreased range of motion. (*Id.*) Plaintiff hyperventilated during palpation of his right thoracic and lumbar paraspinal muscles and his upper right extremity, hip, ankle, and foot. (*Id.*) Plaintiff exhibited mild right lumbar paraspinal muscle spasms, but he showed a normal range of motion in his upper extremity muscles. (*Id.*) Plaintiff also had minimal swelling in his right hand, ankle, and foot and a decreased internal rotation of his right shoulder. (*Id.*)

In August 2013, state agency physician David Tiersten M.D. reviewed the record. (Tr. 74-75.) Dr. Tiersten opined that Plaintiff could frequently lift ten pounds, and occasionally twenty pounds; stand and/or walk for four hours in an eight-hour day or sit for six hours; perform limited pushing and/or pulling, and occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. (*Id.*) However, Plaintiff could never climb ladders, ropes, or scaffolds. (*Id.*) On October 14, 2013, David Weiss, D.O. physically examined Plaintiff. (Tr. 443.) Dr. Weiss stated that based on his 2013 evaluation "[Plaintiff] is to be considered 100% disabled …." (Tr. 436-437.)

### 3. Mental Health Treatment

In December 2013, Edward Tobe, D.O., examined Plaintiff. (Def.'s Br. 6.) Plaintiff exhibited "no bizarre psychomotor activity," but did evidence "straining of his face and muscle tension of his hands." (Tr. 435.) According to Dr. Tobe, Plaintiff feels guilty for not being able to support his family. (*Id.*) He is particularly concerned for his future employability and "presents as a very discouraged man." (*Id.*) Dr. Tobe opined that Plaintiff's work injury caused "30 percent permanent of total neurological disability," and "25 percent permanent of total psychiatric disability" because of anxiety. (*Id.*) Dr. Tobe maintained these estimates are based on "objective medical findings" and "materially impair the ordinary pursuits of life." (*Id.*)

**4. Hearing Testimony**

On February 25, 2015, Plaintiff testified before ALJ Olarsch in Newark, New Jersey. (Tr. 34.) At the hearing, Plaintiff testified that he was forty-seven years old, six feet, three inches tall, and weighed 170 lbs. (30-35 lbs. lighter than usual). (Tr. 35.) Plaintiff testified that he is able to drive, but that his sister drove him to the hearing. (*Id.*) He has a high school education with certifications as a security officer and firefighter. (*Id.*)

In 1988, Plaintiff injured his right foot while enlisted in the United States Marine Corps and was diagnosed with reflex sympathetic dystrophy. (Tr. 41.) Plaintiff's injury did not begin to affect him until 2011, when "it was getting to be hard to walk," and he "started limping." (Tr. 42.) Plaintiff testified that he suffered from "bad pain," and observed discoloration and swelling in his foot. (*Id.*) While seeking treatment at the Freeman Pain Institute, Plaintiff was diagnosed with a sacroiliatic condition and "started getting injections into [his] hip to relieve the pain." (*Id.*) Plaintiff testified that he was injured at work two months after he began treatment at the Freeman Pain Institute. (Tr. 43.)

From June 2009 through October 2011, Plaintiff worked various jobs as a chemical operator.[3] (Tr. 36.) He worked twelve-hour night shifts, "sort[ing] out silver powder, push[ing] drums around, pull[ing] drums, lift[ing] them up, dump[ing] them in, and us[ing] machinery to also sift out." (*Id.*) As a chemical operator, Plaintiff generally earned between $50,000 and $60,000 annually. (Tr. 40.)[4]

Plaintiff testified that on October 1, 2011, nine hours into his shift, he began to train on that blender, which had a hydraulic valve. (Tr. 37.) The hydraulic valve, "which is very rare in that kind of machinery…caught the drum and literally threw it…hit[ing] [Plaintiff]…." (*Id.*) As a

---

[3] Plaintiff was unemployed between 2007 and 2009. (Tr. 39.)
[4] At the time of the hearing, Plaintiff had a worker's compensation claim pending. (Tr. 43.)

6

result of the accident, Plaintiff injured his right hand, arm, and shoulder, his upper neck and back, and his lower back. (Tr. 44.) Plaintiff testified that since the accident, he has had "surgeries, nerve damage[], [and his] hand is still swollen." (Tr. 37.) During the hearing, ALJ Olarsch asked Plaintiff to make a fist with the injured hand. (Tr. 38.) While Plaintiff was able to do so, he testified that "it does hurt, because it's cramped," and that it was "not as strong as the left." (*Id.*) After Plaintiff had surgery on his neck, he attended physical therapy for nearly six months, but Plaintiff stated that it was not useful. (Tr. 44.)

Plaintiff testified that he takes Percocet, and Meloxicam, a muscle relaxer. (Tr. 45.) Although Plaintiff can drive short distances, he is "afraid to drive with a pain killer." (*Id.*) Plaintiff testified that he cannot grip the steering wheel with his right hand and has difficulty spinning and turning the wheel. (Tr. 46.) While Plaintiff walks his youngest child to the bus stop, half-a-block away, his wife drives the other children to school. (Tr. 51.) Plaintiff uses the arm of the chair in his car to get up from a seated position, but is unable to use his right arm to move or push himself up. (*Id.*) During the hearing, ALJ Olarsch questioned Plaintiff's ability to "stand comfortably with both feet planted." (*Id.*) Plaintiff testified that he can stand for approximately fifteen minutes, but has to "keep hobbling back and forth," shifting his weight. (*Id.*) After standing for about fifteen minutes, Plaintiff testified that he needs to lay down. (*Id.*) Plaintiff stated that he might be able to lift ten pounds, but that he could not do so repeatedly because it "pull[s] on the neck and the back area." (Tr. 47.)

Plaintiff can occasionally do laundry, but has difficultly lifting heavy loads and can only squat down gently. (*Id.*) Plaintiff testified that while he can dress and wash himself, he has to sit down and do so carefully. (*Id.*) Because Plaintiff's hands are regularly swollen, he has trouble buttoning clothing. (*Id.*) Plaintiff can "try to scribble" with his left hand, and can work with a

7

computer, but not well. (*Id.*) Plaintiff testified that he can walk about a quarter-mile, but after, he would need to sit down and catch his breath. (Tr. 50.) Because Plaintiff cannot lay on his right side, he frequently wakes up with pain and cannot sleep well. (*Id.*) On approximately four days out of the week, Plaintiff naps. (*Id.*) Plaintiff testified that his weight loss was largely from stress induced by the foreclosure of his home, filing for bankruptcy, not working, and struggling to provide for his family. (Tr. 51.)

Plaintiff testified that "if it's simple enough," he can occasionally make dinner; he can also wash dishes, and on occasion cut the grass (if his son is unable to), but all the tasks are difficult and take a long time. (Tr. 53-54.) Plaintiff testified that he is able to grocery shop, but does so by ordering the groceries in advance, and bringing his children with him to load and unload the car. (Tr. 56.) When ALJ Olarsch asked Plaintiff "if there was a job where you could sit and stand at your own option and you didn't have to lift [ten] pounds, you only had to lift a couple pounds, but they expected you to be at your work site the entire day, could you do that?" Plaintiff answered, "No." (Tr. 57-58.) Plaintiff also testified that he could not get through an eight-hour day, five-day-a-week job, even if he could lay down during the day. (*Id.*) Out of a seven-day work week, Plaintiff testified he would have to call out one to two times per week. (*Id.*)

At the hearing, Rocco J. Meola[5], a Vocational Expert, testified regarding characteristics of Plaintiff's past work. (Tr. 34, 61.) According to Mr. Meola, a hypothetical individual with Plaintiff's education, training, work experience, and functional limitations could not perform his past work as a chemical operator. ALJ Olarsch asked Mr. Meola if Plaintiff was qualified for employment that would not require exposure to dangerous machinery or unprotected heights," and

---

[5] The Court is familiar with Vocational Expert "Rocco J. Meola" from prior Social Security appeals. Thus, the Court will refer to the Vocational Expert as "Rocco J. Meola" or "Mr. Meola" even though his name was phonetically spelled "Rocko J. Violo" in the hearing transcript.

8

would allow absences of up to one day per month. (Tr. 62-63.) Mr. Meola testified that there were approximately 40,000 scale operator jobs that would fit those limitations and approximately 200,000 inspector packer jobs. (Tr. 63.) He further testified that Plaintiff would also be able to stand for a minute or two every hour without a negative impact on his ability to work. (Tr. 66-67.) However, Mr. Meola concluded that if Plaintiff could only occasionally handle products with both hands, needed additional time to rest at the workplace, had to call out of work one day per week, and if he had an adverse response to medication that made him drowsy or inattentive for 15% or more of the time, then Plaintiff would be precluded from all of these jobs in the competitive market. (Tr. 63-67.)

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if

9

the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B. The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of

11

impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of

his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

#### A. ALJ Olarsch's Decision

On March 24, 2015, ALJ Olarsch found that Plaintiff was not disabled under §§ 216(i) and 223(d) of the Social Security Act and denied his application for a period of disability and disability insurance benefits. (Tr. 20, 27.) ALJ Olarsch determined that Plaintiff's impairments are severe "because they are medically determinable impairments that, when considered either individually or in unison, significantly limit the [Plaintiff's] mental and physical abilities to do one or more basic work activities," and "have lasted at a 'severe' level for a continuous period of more than

13

[twelve] months." (Tr. 22.) However, ALJ Olarsch concluded that the medical evidence did not support the specified criteria required for major dysfunction of a joint. (*Id.*) Listing 1.02 requires "gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and finding on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankyloses of the affected joint." (*Id.*) Listing 1.02 also requires "involvement of one major peripheral joint resulting in the inability to perform fine and gross movements." (*Id.*) Because Plaintiff did not demonstrate that he had difficulty in performing those fine and gross movements, and did not "establish the requisite evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis," ALJ Olarsch concluded that his impairments were not "severe" as defined by 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

ALJ Olarsch found that Plaintiff is unable to perform his past relevant work as a chemical operator. (Tr. 26.) However, he also found that Plaintiff has the residual functional capacity to perform light-duty work as defined in 20 C.F.R. § 404.1567(b), with the following limitations: he would be unable to work around dangerous machinery and unprotected heights; he would be absent one day a month; and he would be limited to occasional postural maneuvers and frequent grasping with the right hand. (Tr. 23.) In considering Plaintiff's symptoms, ALJ Olarsch followed a two-step process to determine Plaintiff's residual functional capacity. (*Id.*) He first determined whether there were medically determinable impairments and then evaluated the intensity, persistence, or functionally limiting effects of the symptoms. (*Id.*) In addition, where Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain and other symptoms were not substantiated by objective medical evidence, ALJ Olarsch evaluated the credibility of the statements based on the entire record of medical evidence. (*Id.*)

14

Although ALJ Olarsch found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he also found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not sufficiently credible. (Tr. 24.) The ALJ determined that the objective medical evidence Plaintiff provided failed to support Plaintiff's allegations of complete disability. (*Id.*) In making his determination, ALJ Olarsch considered x-rays of Plaintiff's cervical spine, which showed narrowing of the disc space at C5-6 and C6-7, which showed no fractures or swelling, and an MRI of Plaintiff's neck, which showed a right disc herniation at C6-7 and disc bulging at C3-4 through C5-6. (*Id.*) ALJ Olarsch also noted that Plaintiff had full range of motion in his neck, but exhibited tenderness in his back and right wrist. (*Id.*) While Plaintiff's symptoms were considered, the ALJ determined that his symptoms had improved, with his only restriction being limited to lifting no more than twenty pounds. (*Id.*)

ALJ Olarsch focused on Plaintiff's ability to feed his children and drive them to school or the bus, do the laundry, clean, cut the grass, or make dinner. (*Id.*) He also gave weight to Plaintiff's ability to dress himself, mount himself on an exam table, walk on his heels and toes, and squat. (Tr. 25.) The ALJ also noted the "very minimal swelling and tenderness" Plaintiff displayed in his right hand. (*Id.*) Additionally, ALJ Olarsch relied on the disability determination services opinion that Plaintiff could perform a range of medium work, and rejected the claim that Plaintiff was limited to standing or walking for only four hours a day. (*Id.*) Indeed, ALJ Olarsch found that Plaintiff was not precluded from all work activity and could return to work that did not require lifting more than twenty pounds. (*Id.*) ALJ Olarsch dismissed Dr. Weiss's report that Plaintiff has 87.5% disability for his cervical impairment as unsupported, finding that although Plaintiff has some limitations because of his physical impairments, they are not disabling. (*Id.*) ALJ Olarsch

15

went on to find Dr. Weiss's report "unsupported and overly restrictive" with "no objective findings to justify [his] broad restrictions." (*Id.*)

ALJ Olarsch also dismissed Dr. Tobe's assessment that Plaintiff suffers from anxiety disorder secondary to his pain and was 25% disabled. (Tr. 25, 435.) Ultimately, ALJ Olarsch concluded that objective medical evidence contained in the record supports the residual functional capacity, but he did not cite to any particular evidence. (Tr. 25.) Finding that the record reflected successful treatment through injections and therapy, ALJ Olarsch determined that Plaintiff could at least perform light-duty work, and does not show any debilitating limitations. (Tr. 26.) Based on the testimony of the vocational expert, and taking into account Plaintiff's "age, education, work experience, and residual functional capacity," the ALJ determined that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and is therefore not disabled. (Tr. 27.)

**B. The ALJ Must Evaluate All the Evidence and Explain the Basis for His Conclusions**

The ALJ must consider all relevant evidence when determining an individual's residual functional capacity. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). This evidence includes medical records, observations made during medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others. 20 C.F.R. 404.1545(a). The ALJ's finding of residual functional capacity must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). If the ALJ does not provide an adequate explanation for his decision, the case should be vacated and remanded in order to fully develop and explain the factual findings. *Burnett*, 220 F.3d at 121

(ordering remand where ALJ did not explain why he rejected certain evidence that supported plaintiff's claim).

ALJ Olarsch insufficiently analyzed the effects of Plaintiff's credible medical ailments and did not explain the basis of his findings. Specifically, ALJ Olarsch failed to adequately explain why he accepted certain medical information, but rejected others, why he concluded that Plaintiff could engage in a variety of activities when Plaintiff testified to the contrary, and why he rejected subjective mental and psychological complaints as not credible or unsupported.

After determining that Plaintiff's impairments were severe, ALJ Olarsch concluded that Plaintiff could perform light-duty work as defined in 20 C.F.R. § 404.1567(b), with the condition that he be precluded from working around dangerous machinery and unprotected heights, would be absent one day per month, and required occasional postural maneuvers and frequent grasping with his right hand. (Tr. 22-23.) However, Plaintiff testified that he would be unable to perform work that would require him to be at the work site for an entire day, even if he could sit and stand at his own option and would lift items less than ten pounds. (Tr. 57-58.)

Moreover, the vocational expert testified that if Plaintiff could only occasionally handle products with both hands, required additional resting time at work, and would have to call out one day per week, then Plaintiff would be precluded from all jobs in the competitive market. (Tr. 63-67.) In addition, the hypotheticals ALJ Olarsch posed to the vocational expert failed to encompass *all* of Plaintiff's impairments. *See Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) ("A hypothetical question posed to a vocational expert 'must reflect *all* of a claimant's impairments.'") (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In his questions to the expert, ALJ Olarsch did not reference any of Plaintiff's psychological or mental impairments, or all of his physical impairments. (Tr. 66.) For example, ALJ Olarsch

did not refer to Plaintiff's reflex sympathetic dystrophy. (*Id.*) Moreover, Plaintiff testified that he would have to call out at least one day per week, and would be unable to frequently handle products with both hands. (Tr. 57-58.) Without explaining why he found Plaintiff's testimony unsupported, ALJ Olarsch concluded that Plaintiff had the residual functional capacity adequate to perform light-duty work. A more detailed explanation as to why ALJ Olarsch accepted certain medical information and rejected others is required. The medical evidence ALJ Olarsch accepted goes directly toward determining Plaintiff's residual functional capacity. In turn, this ultimately affected the hypothetical posed to the vocational expert at the hearing.

In addition, ALJ Olarsch broadly states that Plaintiff could perform a variety of simple tasks around the home, such as washing the dishes and laundry, cooking dinner, mowing the lawn, grocery shopping, or driving his children to school. (Tr. 24.) However, Plaintiff testified that he could only perform these tasks on occasion and avoided them because "he can't really do much anymore." (Tr. 53-55.) ALJ Olarsch failed to explain why he concluded Plaintiff could perform these broad activities when Plaintiff indicated that he only does these activities on an infrequent basis. A more detailed explanation is required in light of Plaintiff's testimony.

Finally, ALJ Olarsch conclusorily rejected Plaintiff's complaints of subjective mental and psychological disability, stating that his claim of an anxiety disorder "was not alleged by the [Plaintiff] and there is no support for this assessment." (Tr. 25.) In his conclusion, ALJ Olarsch rejected Dr. Tobe's report on Plaintiff's mental and psychological disability without explanation. ALJ Olarsch's rejection of Plaintiff's claims, without more detail, is insufficient. [6]

---

[6] In his decision, ALJ Olarsch states that the record makes reference to bipolar disorder, but finds that there is no evidence to show the impairments had the requisite limiting effects on Plaintiff's ability to perform basic work activities. (Tr. 22.) The Court notes that part of the Administrative Record on appeal includes medical records that reflect a past medical history of bipolar disorder, but for an entirely different patient (*i.e.*, Richard Tkacz). (Tr. 454-520.) Records for Mr. Tkacz should not have been included in Plaintiff's appeal, and they should not have been considered by the ALJ.

Because ALJ Olarsch did not clearly evaluate all medical evidence when determining Plaintiff's residual functional capacity, this Court cannot assess whether the ALJ's finding that Plaintiff can perform light-duty work is supported by substantial evidence. To allow for meaningful judicial review, ALJ Olarsch must examine and explain all limitations in determining Plaintiff's residual functional capacity.

## IV. CONCLUSION

For the reasons stated above, the ALJ's decision is **VACATED** and **REMANDED** for further proceedings consistent with this opinion.

s/ *Susan D. Wigenton*<br>
**SUSAN D. WIGENTON**<br>
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties